UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EARL S. KNIGHT,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:13-cv-1882 (JAM) |
| CEREJO, *Detective*, et al.,<br>    Defendants. | :<br>:<br>: |

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

*Pro se* plaintiff Earl Knight is presently serving a prison term following his conviction in Connecticut state court on charges of criminal possession of narcotics with intent to sell and criminal possession of a firearm. In this federal lawsuit for money damages under 42 U.S.C. § 1983, plaintiff claims that the police violated his constitutional rights in connection with the investigation that led to his conviction and that his defense attorney rendered constitutionally ineffective assistance of counsel. All parties now move for summary judgment. I will grant defendants' motions and deny plaintiff's motion, principally on the ground of qualified immunity and on the ground that this lawsuit for damages under § 1983 is a procedurally improper attack on plaintiff's conviction and thereby foreclosed by *Heck v. Humphrey*, 512 U.S. 477 (1994).

**BACKGROUND**

The following facts are accepted as true for purposes of the motions for summary judgment.[1] On September 26, 2011, defendant Detective John Cerejo and other Meriden police officers conducted surveillance near 253 Cook Avenue in Meriden, Connecticut. The

---

[1] The facts set forth here are taken from defendants' Local Rule 56(a)(1) Statements and supporting exhibits. Plaintiff has not filed a counterstatement pursuant to Local Rule 56(a)(2), and the Court's local rules provide that the facts set forth in a moving party's statement under Local Rule 56(a)(1) will be deemed admitted if a non-moving party fails to file a proper counterstatement of material facts as required under Local Rule 56(a)(2) and 56(a)(3).

surveillance resulted from complaints by area residents that three men were dealing drugs from a residential building at that address. Cerejo and his colleagues surreptitiously surveilled the men and saw one of them engage in what appeared to be a hand-to-hand narcotics transaction.

Soon, however, the three men became aware that the police were watching them. Cerejo then approached them, displaying his badge and identifying himself as a police officer, and he ordered the men to stay where they were. Plaintiff and a second man complied, but the third man ran into the residence building, first through a common area on the ground floor, and then into a first floor apartment, locking the apartment door behind him.

Cerejo pursued the fleeing male into the common area, through a door that was already open, but did not enter the locked apartment. Plaintiff, however, immediately followed Cerejo and tried to grab him to stop him from entering the building. Another police officer arrested plaintiff for his attempted interference with and assault on Cerejo. Plaintiff denied knowing the identity of the third man who had fled into the apartment.

In the meantime, numerous occupants came out of other residential units in the building and loudly protested the police presence. The scene was chaotic and tinged with racial tension and race-related remarks. Plaintiff's mother soon arrived on the scene and indicated that she lived in the apartment where the third man was. She was hostile toward the police. After Cerejo told her that there was an unknown man in her apartment, she said that no one should be in her apartment and that she would go inside to see if anyone was there. She refused Cerejo's request that he accompany her into the apartment, and she then entered the apartment through the back door.

After plaintiff's mother was inside, Cerejo heard her screaming at someone to get out of

her home. According to his summary judgment affidavit, Cerejo believed that plaintiff's mother's safety was in jeopardy, and so he entered the apartment and went to the room where plaintiff's mother was yelling. In that room, plaintiff's mother had opened a closet door, and the unknown male was crouched on the floor.

Cerejo took the male into custody, and he directed another officer to search the closet for contraband. The search of the closet revealed a large amount of ammunition in plain view. In the meantime, plaintiff's mother became irate at Cerejo, and she was also placed under arrest for interfering with the police.

According to Cerejo's police report, after plaintiff's mother learned that ammunition had been found in her apartment, "she finally stopped being so uncooperative." Doc. #23-5 at 5. Plaintiff's mother claimed that there should be no ammunition in her apartment. The police "explained to her that this is a large safety risk (especially because a young baby resides in the house) to all the residents if there is a firearm also in the closet," and "[s]he agreed and then gave Detective Visconti consent to search." *Id.* at 5–6; *see also* Doc. #23-6 at 2–3.

Plaintiff's mother also signed a written consent form to allow the police to search her apartment (Doc. #23-7). She signed the consent form after having been advised of her *Miranda* rights and after being told that she could accompany the officers as they conducted the search. One of the police officers searched the closet, and he found a sawed-off rifle, a handgun, ammunition, and Ziploc bags commonly used to package narcotics. Elsewhere in the room, the police found a large amount of crack cocaine individually packaged for street sale. Plaintiff's mother told Cerejo that the room in which the firearms and narcotics were found was plaintiff's bedroom.

Plaintiff was thereafter charged with narcotics and firearms crimes based on the evidence found in his bedroom and closet, in addition to attempted assault and interference with a police officer. Doc. #23-5 at 7. On July 11, 2012, he pled guilty in Connecticut Superior Court to possessing narcotics with intent to sell and criminal possession of a firearm. On October 10, 2012, he was sentenced on these charges to a term of imprisonment of ten years, execution suspended after five years and with a five-year mandatory minimum, followed by three years of probation. He retained defendant Jason Goddard as an attorney who represented plaintiff for the guilty plea and sentencing.

In late 2013, plaintiff filed this lawsuit against defendants Cerejo and Goddard in Connecticut Superior Court, and defendants removed the action to this Court on the ground that plaintiff alleges violation of his federal constitutional rights. Plaintiff claims that Cerejo violated his Fourth Amendment rights, subjecting him to false arrest and malicious prosecution. He further claims that Goddard rendered constitutionally ineffective assistance of counsel, because he "[n]eglected to investigate the case as a whole" and because he "[p]ut the plaintiff to plead without explaining" that he faced "a 5 year mandatory which was not mentioned at all." Doc. #1-3 at 7. The Court has previously dismissed additional claims under the First and Eighth Amendments, as well as a claim against the Meriden police department. *See* Doc. #19. Both Cerejo and Goddard have now moved for summary judgment to dismiss the remaining claims, and plaintiff has cross-moved for summary judgment in his favor. *See* Docs. #23, 26, 31.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any

4

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). A plaintiff, however, may not rest on the allegations of his complaint as to matters that are controverted by a defendant's properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).[2] All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson*, 477 U.S. at 249).

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The Fourth Amendment limits both searches and seizures. A "search" for purposes of the Fourth Amendment occurs when the police intrude upon a person's reasonable expectation of privacy or if the police otherwise trespass upon a suspect's person, house papers, or effects for the purpose of acquiring information. *See United States v. Jones*, 132 S. Ct. 945, 951 n.5 (2012); *United*

---

[2] Nor does the complaint in this record suffice as a competent summary judgment affidavit in view that it was not a verified complaint under oath. Doc. #1-3 at 8. *C.f. Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). The *pro se* plaintiff here was advised of his obligations with respect to producing affidavits or other competent evidence to support and oppose a motion for summary judgment in accordance with D. Conn. Local Civ. R. 56(b). Doc. #28.

*States v. Ganias*, 755 F.3d 125, 133 (2d Cir. 2014). A "seizure" under the Fourth Amendment occurs when the police intentionally terminate one's freedom of movement by means of physical force or by show of their official law enforcement authority. *See Brendlin v. California*, 551 U.S. 249, 254 (2007); *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007).

It is well established that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States Dist. Court for Eastern Dist. of Mich.*, 407 U.S. 297, 313 (1972). Indeed, "[t]he core premise underlying the Fourth Amendment is that warrantless searches of a home are presumptively unreasonable." *Harris v. O'Hare*, 770 F.3d 224, 231 (2d Cir. 2014) (citing, *inter alia*, *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011)). If police officers have neither a warrant nor valid consent, they need no less than both probable cause and exigent circumstances in order to lawfully enter or remain in a person's home. *Ibid.* (citing *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (*per curiam*)); *Fernandez v. California*, 134 S. Ct. 1126, 1132 (2014).

Not every police violation of the Fourth Amendment may justify an award of money damages. That is because the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Carroll v. Carman*, 135 S. Ct. 348, 351 (2014). The Supreme Court has recently explained that "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Richard*, 134 S. Ct. 2012, 2023 (2014) (citation omitted).

In this manner, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (internal quotations marks and citation omitted). Thus, for example, to the extent that the Fourth Amendment requires the police to have probable cause to support a search or seizure, the police have qualified immunity provided that they have even *arguable* probable cause to support their actions. *See, e.g.*, *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014).

The complaint here alleges multiple Fourth Amendment violations by defendant Cerejo. First, the complaint alleges that plaintiff was improperly arrested (seized) following his effort to stop Cerejo from entering the apartment. This claim lacks merit, because the undisputed facts establish at least arguable probable cause that plaintiff attempted to interfere with a police officer when he tried to physically prevent him from apprehending the third male. *See* Conn. Gen. Stat. 53a-49 (attempt), 53a-167a (interfering with an officer). Although plaintiff complains that he was not told the reason for his arrest, there is no clearly established law that required the police to tell him the grounds for arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 155 (2004) ("While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required.").

Plaintiff next complains that Cerejo unlawfully entered the apartment after plaintiff's mother had refused consent for him to do so.[3] But the uncontested summary judgment evidence shows that Cerejo entered the apartment because of concerns for the safety of plaintiff's mother after he heard her screaming. Although plaintiff disagrees, he was not present to witness the

---

[3] Although the complaint also alleges that Cerejo improperly entered the common area of the residential building as he was pursuing the third male, plaintiff has since withdrawn his challenge to that entry. Doc. #40 at 9, ¶ 19. In any event, plaintiff has done nothing to show that his privacy or property rights were infringed by police entry into the common area of the residential building where he apparently lived.

7

events involving Cerejo's entry, and he has not adduced competent summary judgment evidence to controvert Cerejo's account. It is well established that the police may enter a residence in their community caretaking function if a reasonable officer would believe it necessary to respond to an emergency and for the safety of persons inside. *See, e.g.*, *Brigham City v. Stuart*, 547 U.S. 398, 403, 406 (2006) (police entry to intervene in altercation inside home); *see also United States v. Simmons*, 661 F.3d 151, 157 (2d Cir. 2011). Exigent circumstances also arguably existed under the hot pursuit doctrine from the moment that the third male fled from the police into the apartment after the police had witnessed unlawful drug dealing activity and commanded the three men to stop. *See United States v. Moreno*, 701 F.3d 64, 72 (2d Cir. 2012) (citing *King*, 131 S. Ct. at 1856), *cert. denied*, 133 S. Ct. 2797 (2013). At the least, Cerejo is entitled to qualified immunity with respect to this aspect of plaintiff's claim, because plaintiff has not shown that Cerejo's entry into the apartment was in violation of clearly established law of which an objectively reasonable police officer should have been aware.

Plaintiff further contends that his mother did not validly consent to the search of his closet and bedroom where the firearms and drugs were found that were used as the basis for his conviction. But there is no genuine issue of fact to suggest that his mother's consent was involuntary and in violation of the Fourth Amendment. *See Moreno*, 701 F.3d at 72 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49 (1973)). Cerejo has attested that he obtained her voluntary consent, *see* Doc. #23-5 at 5–6, and he has introduced a signed copy of the consent form on which she verified that she was giving her voluntary consent to the police search of her apartment after having been advised of her right not to grant consent. Doc. #23-7 at 2. Although plaintiff contends that her consent was not voluntary, he was not present when she gave her

8

consent (having been already arrested and taken to the police station, Doc. #26 at 5), and he did not introduce any competent non-hearsay evidence (such as an affidavit from his mother) to controvert the evidence reflecting plaintiff's mother's voluntary consent. Nor has plaintiff shown that the officers could not reasonably have relied on the authority of plaintiff's mother to consent to the search of the closet and bedroom. *See Illinois v. Rodriguez*, 497 U.S. 177, 192–93 (1990). At the least, Cerejo is again entitled to qualified immunity with respect to this claim, because plaintiff has not shown that the consent search of the apartment was in violation of clearly established law of which an objectively reasonable police officer should have been aware.

Even assuming that a genuine issue of fact existed concerning the entry to and search of the apartment, plaintiff's challenge would still fail because a § 1983 action may not do service for a habeas corpus petition to serve as a vehicle for a challenge to the validity of a criminal conviction. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court made clear that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. Plaintiff has done nothing to show that his conviction has been set aside. If a prisoner wishes to challenge his conviction, the proper vehicle is by means of a petition for writ of habeas corpus in Connecticut state court rather than an action for money damages in federal court under § 1983. *See also Wilkinson v. Dotson*, 544 U.S. 74, 78–82 (2005) (describing relationship between § 1983 actions and habeas corpus petitions).

To be sure, the *Heck* rule does not necessarily foreclose a Fourth Amendment claim as long as prevailing on the specific claim would not effectively demonstrate the invalidity of a prisoner's conviction. *See Heck*, 512 U.S. at 487 n.7; *see also Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999). But here, as the plea and sentencing transcripts show (Docs. #23-8, #23-9), plaintiff's convictions and sentences were based entirely on guns and drugs found at his mother's apartment. Indeed, in his opposition to summary judgment, plaintiff himself agrees: "The plaintiff asserts that without the contraband discovered during an illegal search of his bead-room [sic], the state would have no evidence to support the plaintiff's prosecution, and the plaintiff would likely not have pleaded guilty to any crime." Doc. #40 at 12.

Accordingly, there can be no doubt that plaintiff's Fourth Amendment claim—if successful—would demonstrate that his conviction was invalid, and therefore *Heck* forecloses plaintiff's claim. *See Covington*, 171 F.3d at 123 (*Heck* rule may apply "in a case where the *only* evidence for conviction was obtained pursuant to an arrest, [because] recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence"); *Clayton v. City of Poughkeepsie*, 2007 WL 2154196, at *3–4 (S.D.N.Y. 2007) (*Heck* rule foreclosed § 1983 claim based on Fourth Amendment violation that would have necessarily demonstrated the invalidity of underlying conviction).

Moreover, even were I to conclude that the alleged Fourth Amendment violation here did not imply the invalidity of plaintiff's conviction, *Heck* also makes clear that any compensatory damages for a claimed Fourth Amendment violation "does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." 512 U.S. at 487 n.7. Plaintiff's complaint quite candidly requests that the Court "revisit[] the criminal case

10

[e]ncompassing the foregoing facts and circumstances." Doc. #1-3 at 8. Although the complaint otherwise demands money damages, there has been no showing of any damages to plaintiff not involving the seizure of contraband that has led to his imprisonment and conviction. The lack of cognizable damages is further reason precluding plaintiff's § 1983 claim. *See Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) (*Heck* rule foreclosed damages from conviction and imprisonment, and complaint otherwise failed to allege damages from "brief invasion of privacy related to the seizure and initial search of [plaintiff's] person"). In short, plaintiff's claims against defendant Cerejo fail on grounds of qualified immunity and on grounds that they are otherwise foreclosed under *Heck v. Humphrey*.

Plaintiff's claim of ineffective assistance of counsel against Attorney Goddard also fails as a matter of law. First, because plaintiff's claim against his counsel doubtlessly implies the invalidity of plaintiff's convictions, the *Heck* rule forecloses his claim. *See Kevilly v. New York*, 410 Fed. App'x 371, 375 (2d Cir. 2010); *Trimble v. City of Santa Rosa*, 49 F.3d 583, 584–85 (9th Cir. 1995) (*per curiam*). Moreover, absent an allegation (not made here) that a defense attorney conspired with the prosecution or other state actors to deny a plaintiff his constitutional rights, it is well established that a defense attorney is not a state actor subject to constitutional liability at all under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004). Accordingly, I need not consider the merits of plaintiff's claim of ineffective assistance of counsel, because it is clear that plaintiff may not pursue this type of claim by means of a constitutional action for money damages under § 1983.

## CONCLUSION

Defendants Cerejo's and Goddard's motions for summary judgment (Docs. #23, #31) are

GRANTED. Plaintiff's cross-motion for summary judgment (Doc. #26) is DENIED.

The Clerk is directed to enter judgment in favor of defendants and close this case.

**SO ORDERED**.

/s/ <i>Jeffrey Alker Meyer</i><br>Jeffrey Alker Meyer<br>United States District Judge

Dated at Bridgeport, Connecticut, this 2nd day of March 2015.